UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOURDAN J. LAPUENTE, JR., | CIV. NO. 22-00119 LEK-WRP |
| Plaintiff, | |
| vs. | |
| MS. ESTELLA DERR, | |
| Defendant. | |

**ORDER DENYING PETITIONER'S PETITION FOR A
WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

Before the Court is pro se Petitioner Jourdan J. LaPuente, Jr.'s ("Petitioner" or "LaPuente") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), filed on March 23, 2022. [Dkt. no. 1.] On April 11, 2022, LaPuente filed his Motion in Support of Petitioner's Petition Under 28 U.S.C. 2241 for Writ of Habeas Corpus ("Memorandum in Support"). [Dkt. no. 7.] On May 11, 2022, Respondent Estela Derr, Warden of the Federal Detention Center in Honolulu, Hawai`i ("Respondent" or "Warden Derr" and "FDC Honolulu") filed her Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Response"). [Dkt. no. 9.] On May 18, 2022, LaPuente filed his Response to Answer to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. 2241 ("Reply"). [Dkt. no. 10.] On May 15, 2023, Warden Derr filed a supplemental declaration, at the Court's direction. [Supplemental

Declaration in Response to the Court's Minute Order Dated April 24, 2023, ECF No. 11, filed 5/15/23 (dkt. no. 13) ("Suppl. Response").]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  LaPuente's Petition is hereby denied for the reasons set forth below.

## BACKGROUND

On October 28, 2021, LaPuente was originally sentenced to eighteen months imprisonment and three years of supervised release.  See United States v. LaPuente, Jr., CR 21-00077-LEK ("CR 21-077"), Judgment in a Criminal Case, filed 10/29/21 (dkt. no. 29) ("First Judgment"), at 2-3.  On October 7, 2022, LaPuente was subsequently sentenced to three months imprisonment and 33 months of supervised release for violating Special Condition Nos. 1 and 2, and Mandatory Condition No. 3.  See id., Judgment in a Criminal Case, filed 10/7/22 (dkt. no. 48) ("Second Judgment"), at 3-4.  LaPuente was released from FDC Honolulu on February 2, 2023.  See Federal Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited Apr. 20, 2023).  He is currently in an inpatient treatment facility for additional violations of his special conditions.  See, e.g., CR 21-077, Minutes, filed 1/24/23 (dkt. no. 58); id., Abstract of Release, filed 1/27/23 (dkt. no. 60).

At the time of the filing of the Petition, LaPuente was incarcerated at FDC Honolulu.  [Petition at 2.]  LaPuente challenges his designation as ineligible to receive First Step Act ("FSA") credits.  See id. at 3.  He states he was denied 105 days of time credits and, therefore, he had a miscalculated release date of July 4, 2022 rather than March 3, 2022.  See id. at 7.  LaPuente challenged his designation as ineligible to receive FSA credits, and his challenge was denied on February 15, 2022.  See id. at 3.  LaPuente appealed to the unit manager at FDC Honolulu, but he states the unit manager ignored his appeal and refused to give him the appropriate administrative remedy forms to fill out.  See id. at 3–4.  He states he did not pursue additional administrative remedies because he was not given the required forms.  See id. at 4.

Warden Derr states LaPuente is eligible to earn FSA time credits, but because he is classified as a medium risk for recidivism, he is nonetheless ineligible to apply any of the earned time credits to his release date.  See Response at 8 (citing Response, Decl. of Kris Robl ("Robl Decl.") at ¶¶ 12, 13).[1]  Moreover, Warden Derr contends that, if LaPuente "remained in custody past his statutory release date in July 2022, [he] could eventually be downgraded to low risk and, therefore,

---

[1] Kris Robl ("Robl") is a Unit Manager at FDC Honolulu. [Robl Decl. at ¶ 3.]

potentially be able to apply credits to his sentence." [Id. at 9.]  LaPuente's term of supervised release commenced on July 1, 2022.  See CR 21-077, Request for Course of Action, filed 9/17/2022 (dkt. no. 39), at 1.

On April 24, 2023, an entering order was issued directing Warden Derr to file a supplemental declaration addressing whether LaPuente's risk level was lowered and if he is eligible to apply any earned FSA time credits.  See generally Minute Order – EO: Court Order Directing Warden Derr to File a Supplemental Declaration, filed 4/24/23 (dkt. no. 11).  Warden Derr filed the Supplemental Declaration in response to that entering order.  Robl states "[a]t all times during his incarceration, Petitioner's risk level remained at a 'Medium' and was not lowered.  Accordingly, Petitioner remained ineligible to apply First Step Act credits while incarcerated." [Suppl. Response, Decl. of Kris Robl ("Robl. Suppl. Decl.") at ¶ 4.c.]

**STANDARD**

"Review of the execution of a sentence may
be had through petition for a writ of habeas
corpus under 28 U.S.C. § 2241."  United States v.
Giddings, 740 F.2d 770, 772 (9th Cir. 1984).
Section 2241 allows "the Supreme Court, any
justice thereof, the district courts and any
circuit judge" to grant writs of habeas corpus
"within their respective jurisdictions."  28
U.S.C. § 2241(a).  A district court must "award
the writ or issue an order directing the
respondent to show cause why the writ should not

be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.

Yanagihara v. Derr, Civil No. 22-00145 JAO-RT, 2023 WL 2163685, at *3 (D. Hawai`i Feb. 22, 2023).  "In particular, a petitioner may challenge computation of a prisoner's sentence by prison officials via a section 2241 petition."  Walsh v. Boncher, No. 22-cv-11197-DLC, 2023 WL 363591, at *2 (D. Mass. Jan. 23, 2023) (citation and internal quotation marks omitted).

## DISCUSSION

## I.  Mootness

The Court briefly addresses the issue of mootness because LaPuente's circumstances have changed since he filed the Petition.

Article III of the Constitution limits the jurisdiction of the federal courts to "actual, ongoing" "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1; Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); see United States v. Strong, 489 F.3d 1055, 1059 (9th Cir. 2007).  "Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot."  Kittel v. Thomas, 620 F.3d 949, 951 (9th Cir. 2010) (citation and internal quotation marks omitted).  Because "parties must continue to have a personal stake in the outcome of [a] lawsuit," Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted), generally, once a prisoner is released from custody, a habeas petition challenging the prisoner's confinement becomes moot unless there is "'some concrete and continuing injury other than the now-ended incarceration.'"  Qassim v. Bush, 466 F.3d 1073, 1076 (D.C. Cir. 2006); see also Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.

> 1995) ("An inmate's release from prison while his
> claims are pending generally will moot any claims
> for injunctive relief relating to the prison's
> policies unless the suit has been certified as a
> class action." (citations omitted)).

Yanagihara, 2023 WL 2163685, at *3.

LaPuente is no longer incarcerated at FDC Honolulu, and he is currently in an inpatient treatment facility. See CR 21-077, Abstract of Release; see also Robl Suppl. Decl. at ¶ 4.b. However, "it is possible that, any time Petitioner served in custody beyond that which he should have due to a miscalculation of earned time credits could form **part** of the basis of any modification of his supervised release term." See Yanagihara, 2023 WL 2163685, at *3 (emphasis in Yanagihara) (some citations omitted) (citing 18 U.S.C. § 3583(e)). Accordingly, the Petition is not moot.

## II.  Exhaustion of Administrative Remedies

"Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam) (citations omitted). But, because § 2241 does not statutorily require exhaustion, federal courts "have discretion to waive the exhaustion requirement when it is prudentially required . . . ." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004) (citations omitted). "[A] court may waive the prudential exhaustion

6

requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

Warden Derr outlines the Bureau of Prison's ("BOP") administrative grievance process as follows:

> BOP's Administrative Remedy Program has four levels. See 28 C.F.R. § 542.10 -.19. First, an inmate must try to resolve the issue informally with Unit Team staff, using the BP-8 form. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate may submit an administrative remedy request to the Warden using the BP-9 Form. 28 C.F.R. § 542.13(a), 542.14. If unsatisfied with the Warden's response, the inmate may appeal to the Regional Director using the BP-10 Form. 28 C.F.R. § 542.15. Finally, if unsatisfied with the Regional Director's response, the inmate may appeal to the General Counsel using the BP-11 Form. Id. An inmate properly exhausts available remedies by appealing through to the General Counsel. See id.; see also Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018).

[Response at 5-6.]

Warden Derr contends LaPuente failed to "even initiate[] the administrative remedy process" and, thus, the Petition must be denied. [Id. at 6.] LaPuente asks the Court to waive the requirement to exhaust the administrative remedy process because the administrative remedy process is

"effectively unavailable to him . . . ."  [Reply at PageID.154.]
Although LaPuente was required to exhaust the administrative
remedies process before filing the Petition, he is no longer an
inmate and, thus, is unable to exhaust the administrative
remedies process.  See Hernandez, 872 F.3d at 988.  Accordingly,
the Court waives the exhaustion requirement and will rule on the
merits of the Petition.

## III. **Merits of the Petition**

### A.   **Relevant FSA Framework**

Under the FSA, eligible inmates are allowed to
earn time credits "towards pre-release custody or
early transfer to supervised release for
successfully completing approved Evidence-Based
Recidivism Reduction programs or Productive
Activities." Nygren v. Boncher, 578 F. Supp. 3d
146, 149 (D. Mass. 2021) (citation omitted).  In
accordance with 18 U.S.C. § 3632(d)(4)(C), an
eligible inmate "who successfully completes
evidence-based recidivism reduction programs or
productive activities shall earn time credits" of
ten days "for every 30 days of successful
participation."  18 U.S.C. § 3632(d)(4)(A)(i).
Earned time credits by eligible inmates are
"applied toward time in prerelease custody or
supervised release."  18 U.S.C. 3632(d)(4)(C)
[sic].

By accelerating the time to secure
prerelease custody or supervised release with FSA
credits, the FSA incentivizes inmates to
participate in and complete beneficial "evidence-
based recidivism reduction" programs ("EBRRs") or
"productive activities" ("PAs").  Pollock v.
Kallis, Civ. No. 20-0359, 2021 WL 3476627, at *4
(D. Minn. Apr. 6, 2021).  In connection thereto,
the Bureau of Prisons ("BOP") assigns a [Prisoner
Assessment Tool Targeting Estimated Risk and
Needs ("PATTERN")] risk score which measures an

> inmate's "criminal risk factors . . . to predict
> the likelihood that a person in federal prison
> will re-offend upon release."  [United States v.]
> DeCaro, [No. 1:96-CR-00005-JAR-1,] 2022 WL
> 4395905, at *1 n.1 [(E.D. Mo. Aug. 23, 2022)];
> Goodman v. Ortiz, Civ. No. 20-7582 (RMB), 2020 WL
> 5015613, at *1 (D.N.J. Aug. 25, 2020) ("BOP
> created a risk and needs assessment system,"
> PATTERN, "in compliance with the First Step Act,
> 18 U.S.C. § 3632(a).").  The four PATTERN risk
> scores are minimum, low, medium, and high-risk.
> DeCaro, 2022 WL 4395905, at *1 n.1.  Inmates with
> a minimum or low PATTERN risk score earn 15 as
> opposed to ten "days of [FSA] time credits for
> every 30 days of successful participation in" an
> EBRR or PA.  Nygren, 578 F. Supp. 3d at 149
> (citing 18 U.S.C. § 3632(d)(4)).

Walsh, 2023 WL 363591, at *1 (some alterations in Walsh)

(footnote omitted); see also Cazares v. Hendrix, 575 F. Supp. 3d

1289, 1294-96 (D. Or. 2021) (outlining relevant provisions of

the FSA addressing earned time credits).

### B.   LaPuente's Eligibility to Apply Earned FSA Credits

Warden Derr argues LaPuente is ineligible to apply any

earned FSA credits because he is classified as a medium risk for

recidivism.  See Response at 7-8.  Specifically, Warden Derr

states LaPuente is eligible to earn FSA time credits,[2] but

---

[2] Warden Derr states that, after reviewing LaPuente's
records, the BOP discovered an error in LaPuente's eligibility
to earn time credits, and the BOP updated his eligibility status
to reflect his ability to earn time credits.  See Response at 8;
see also id., Declaration of Kris Robl at ¶ 12 ("Petitioner was
previously listed as ineligible to both earn and apply federal
time credits.  After reviewing Petitioner's records, I
determined this was an error.  Based on the offenses for which
he is convicted, Petitioner is in fact eligible to earn federal
time credits. . . .").

because he is classified as a medium risk for recidivism, he is nonetheless ineligible to apply any of the earned time credits to his release date. See id. at 8. Moreover, Warden Derr contends that, if LaPuente "remained in custody past his statutory release date in July 2022, [he] could eventually be downgraded to low risk and, therefore, potentially be able to apply credits to his sentence." [Id. at 9.] LaPuente contends that he is eligible to apply his earned time credits because he has reduced his recidivism level from high to medium. See Reply at PageID.157.

18 U.S.C. § 3624(g) states:

Prerelease custody or supervised release for risk and needs assessment system participants.--

(1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--

    (I)  has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

    (II) has had a petition to be transferred to a prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

        (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

        (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

        (cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

LaPuente appears to rely on § 3624(g)(1)(D)(i)(II)(bb) in arguing that, because he went from a high to medium risk level, he is necessarily allowed to apply any earned time

credits.  But, § 3624(g)(1)(D)(i)(II) applies to petitions approved by the warden "after the warden's determination that" the prisoner has met the three requirements set forth in § 3624(g)(1)(D)(i)(II)(aa)–(cc).  LaPuente does not contend that Warden Derr approved a petition to be transferred by determining LaPuente met the three requirements.  Even if LaPuente reduced his risk level from high to medium, that alone is insufficient for him to apply earned time credits.  Accordingly, to the extent that LaPuente argues he was eligible to apply any earned time credits because he participated in productive activities under the FSA and reduced his recidivism level from high to medium, his argument fails.

Warden Derr acknowledged, however, that if LaPuente remained in custody past July 2022, then it was possible for LaPuente's risk level to be reduced to low and he could then begin to apply earned time credits.  See Response at 9.  But, Robl stated that, even though LaPuente remained in custody past July 2022, LaPuente did not lower his risk level below medium. [Robl Suppl. Decl. at ¶ 4.b-c.]  As such, LaPuente "remained ineligible to apply [FSA] credits while incarcerated."  [Id.at ¶ 4.c.]  Because LaPuente's risk level was never lowered to minimum or low risk, he is ineligible to apply any earned FSA credits.  See 18 U.S.C. § 3624(g)(1)(D)(ii).  LaPuente's Petition, therefore, must be denied.

12

## <u>CONCLUSION</u>

On the basis of the foregoing, LaPuente's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, filed March 23, 2022, is HEREBY DENIED.  The Clerk's Office is DIRECTED to enter judgment and close the case on **June 20, 2023,** unless LaPuente files a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 5, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**<u>JORDAN J. LAPUENTE, JR. VS. MS. ESTELLA DERR</u>; CV 22-00119 LEK-WRP; ORDER DENYING PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**